# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Albert J. Welton, III,<br><br>Petitioner,<br><br>v.<br><br>Warden Michelle Smith,<br><br>Respondent. | Case No. 14-cv-3044 (ADM/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

Albert J. Welton, III, Minnesota Correctional Facility–Stillwater, 970 Pickett Street North, Bayport, Minnesota 55003, pro se

Lee W. Berry, C-2000 Government Center, 300 South Sixth Street, Minneapolis, Minnesota 55487, Assistant County Attorney, for Warden Michelle Smith

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Petitioner Albert J. Welton, III's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 [Doc. No. 1]. Petitioner is incarcerated at the Minnesota Correctional Facility in Bayport, Minnesota. The petition has been referred to this Court pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for the issuance of a report and recommendation. For the reasons set forth below, the Court recommends that the petition be denied and no certificate of appealability be granted.

I.      **Background**

    A.      **Charged Crime**

On February 5, 2012, D.I., the victim, was socializing with friends near 31st Street and 13th Avenue in south Minneapolis.  *State v. Welton*, No. A13-0575, 2014 WL 621543, at *1 (Minn. Ct. App. Feb. 18, 2014), *review denied* (Apr. 29, 2014).  D.I. left the house where she was socializing to buy cigarettes at a nearby convenience store. *Id.* at *1.  After walking for a short distance, she accepted a ride from Petitioner.  *Id.* D.I. voluntarily got into Petitioner's black Pontiac Grand Prix.  *Id.*  Petitioner told D.I. that he left his money at home and wanted to go there before going to a different convenience store.  *Id.*  He drove into an alley and asked D.I. if she wanted to smoke some marijuana.  *Id.*  D.I. accepted the marijuana.  *Id.*  After smoking the marijuana, Petitioner asked D.I. if she wanted to have sex.  *Id.*

> Earlier, when D.I. had asked [Petitioner] for a cigarette, he had asked her what she was going to give him for it, which D.I. took to be a flirtatious joke. When [Petitioner] started talking about sex, she thought he was just flirting with her, so she responded by asking, "[W]hat are you going to give me for it?" She told the jury that her remark was a reference to [Petitioner]'s earlier comment, that she was just "playing with him," and that she never intended to suggest exchanging sex for money.

*Id.*  D.I. looked out the window and asked Petitioner about their location because the house they were parked next to was boarded up.  *Id.*  Petitioner proceeded to attack her. *Id.*  He repeatedly punched her in the face with a closed fist.  *Id.*  D.I. tried to escape, but was unable to get away.  *Id.*  D.I. then either retreated to the back seat or was forced to

the back seat by Petitioner. *Id.* Once in the back seat she was able to open the rear door in an attempt to escape. *Id.* As D.I. was halfway out the rear door, however, Petitioner dragged her back into the car. *Id.* Once back in the car, he retrieved an object from the front seat, which D.I. believed to be a hammer or some other weapon. *Id.* D.I. feared that Petitioner would kill her. *Id.* At that point, D.I. realized Petitioner was going to rape her, so she asked him to use a condom in order to protect herself against disease. *Id.* "Holding D.I. down, and holding a condom in his teeth, [Petitioner] made growling sounds, flung the condom aside, pulled off D .I.'s jeans and underwear, and raped her." *Id.*

After the rape, Petitioner demanded money from D.I. *Id.* at *2. D.I. exited the car near 35th Street and Stevens Avenue and yelled to people in a nearby car that she had been raped. *Id.* The motorist gave D.I. a ride to the home of a nearby friend who took D.I. to Abbott Northwestern Hospital. *Id.*

At Abbott Northwestern Hospital, D.I. underwent a sexual-assault examination. *Id.* The examiner testified that she saw bruising on D.I's face, head, jaw, eyes, and an injury to her wrist. *Id.* D.I. was able to identify Petitioner in a photo lineup as her attacker. *Id.*

The trial court admitted *Spreigl* evidence[1] from an alleged sexual assault by Petitioner against another woman, J.K. *Id.* J.K. testified that, while she was working as a prostitute, a man in a black Pontiac Grand Am engaged in her services. *Id.* During the

---

[1] *Spreigl* evidence is evidence of other crimes admitted to show a defendant's motive, intent, identity, absence of mistake, or a common plan or scheme. *State v. Spreigl,* 139 N.W.2d 167, 173 (Minn. 1965).

encounter, as J.K. rode in the man's car, he attacked her with a wooden object, threatened

to kill her, raped her, and then demanded money from her.  *Id.*  Petitioner was ultimately

convicted on two counts of first-degree criminal sexual assault against D.I.  *Id.*

### B.    State Court Appeal

Petitioner appealed, and raised the following arguments:  (1) the trial court erred in

admitting the *Spreigl* evidence; (2) his counsel did not conduct an adequate investigation

with regard to the facts surrounding the crime; (3) the trial court erred by adjudicating

multiple convictions that arose from a single sexual assault; (4) his counsel failed to

request discovery; (5) his counsel failed to impeach the *Spreigl* witness; and (6) his right

to a speedy trial was violated because the trial court granted two continuances.  *Id.* at *6-8.

The Minnesota Court of Appeals found the trial court did not err by admitting the

*Spreigl* evidence.  *Id.* at *3.  It also rejected Petitioner's other grounds for appeal, except

for the argument regarding the multiple convictions that arose from a single sexual

assault.  *Id.*  On that issue, the Court of Appeals reversed and remanded the case to the

district court with a direction to vacate one of the convictions and issue a new warrant of

commitment reflecting the change.  *Id.* at *7.  Petitioner appealed to the Minnesota

Supreme Court, which denied the petition for review.

### C.    Federal Petition for Habeas Corpus

Petitioner filed his federal habeas petition on July 3, 2014, raising three grounds

for relief.  First, he argues that the trial court erred by permitting *Spreigl* evidence that did

not establish a common scheme or plan.  (Pet. 9.)  Second, Petitioner argues that he was

denied his right to effective assistance of counsel because counsel failed to conduct a

reasonable investigation, prepare witnesses for Petitioner's defense, and impeach the

*Spreigl* witness's testimony.  (Pet. 11-13.)  Finally, Petitioner argues that he did not

knowingly waive his right to a speedy trial.  (Pet. 17.)

## II.     Discussion

Habeas relief under § 2254 is warranted in three circumstances:  (1) when a state

court decision was contrary to clearly established federal law, (2) when a state court

decision involved an unreasonable application of clearly established federal law, or

(3) when a state court decision "was based on an unreasonable determination of the facts

in light of the evidence presented."  § 2254(d)(1), (2).  Habeas relief is available to a state

prisoner if "he is in custody in violation of the Constitution or laws or treaties of the United

States."  28 U.S.C. § 2254(a).  The Anti-Terrorism and Effective Death Penalty Act

(AEDPA) prescribes the standards that govern this Court's review of Petitioner's habeas

corpus claims.  The relevant portion of the AEDPA states:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim—
>
> (1)   resulted in a decision that was contrary to, or involved an
>       unreasonable application of, clearly established Federal law, as
>       determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable
>       determination of the facts in light of the evidence presented in the
>       State court proceeding.

*Id.* § 2254(d).

The United States Supreme Court discussed the meaning of the "contrary to" and "unreasonable application" clauses of § 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000). A state court decision is "contrary to" the Supreme Court's precedent if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or if it "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams v. Taylor*, 529 U.S. at 405. A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The habeas court must "ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. A federal court may not find a state adjudication to be unreasonable "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

In addition, when reviewing a state court decision, a federal habeas court "presumes that the state court's factual determinations are correct." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)). This deference applies to factual determinations made by the state trial and appellate courts. *Sumner v. Mata*, 449 U.S. 539, 547 (1981). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Whitehead v. Dormire*, 340 F.3d 532, 539 (8th Cir. 2003).

**A.**   ***Spreigl* Evidence**

Petitioner challenges the trial court's decision to admit *Spreigl* evidence against him.

Under *State v. Spreigl*, evidence of other crimes may be admissible to show a defendant's

motive, intent, identity, absence of mistake, or a common plan or scheme.  139 N.W.2d

167, 173 (Minn. 1965); *see also State v. Kennedy*, 585 N.W.2d 385, 389 (Minn. 1998).

Evidence of other crimes shall not be admitted unless

> (1) notice is given that the state intends to use the evidence; (2) the state
> clearly indicates what the evidence is being offered to prove; (3) the
> evidence is clear and convincing that the defendant participated in the other
> offense; (4) the *Spreigl* evidence is relevant and material to the state's case;
> and (5) the probative value of the *Spreigl* evidence is not outweighed by its
> potential for unfair prejudice.

*Kennedy*, 585 N.W.2d at 389.

"[I]t is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions.  In conducting habeas review, a federal court is

limited to deciding whether a conviction violated the Constitution, laws, or treaties of the

United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citations omitted).

Therefore, Petitioner must do more than merely show a misapplication of state law by a

Minnesota state court.  *See id.*  Petitioner must show a violation of clearly established

Supreme Court precedent.  *See Evenstad v. Carlson*, 470 F.3d 777, 783 (8th Cir. 2006).

Petitioner has failed to cite any United States Supreme Court decision in his

argument to support his claim.  Further, there is no clearly established federal law, as

determined by the Supreme Court of the United States, which says the admission of past-

conduct evidence of this sort violates a constitutional right to a fair trial.  To the contrary,

it is well-established that the admissibility of evidence is for a judge to decide.  *See Lego*

*v. Twomey*, 404 U.S. 477, 490 (1972).  It is out of the province of this habeas court to

reexamine a state court rule of evidence applied within a state court.

> **B.**      **Denial of Effective Assistance of Counsel**

Petitioner argues he was denied the right to effective assistance of trial counsel

because his attorney failed to obtain: (1) the victim's criminal history reports; (2) the

victim's blood alcohol level for the night of the attack; (3) the victim's jeans from the

night of the attack; (4) statements from eyewitnesses who were in contact with the victim

after the attack; (5) statements from the victim's friends; (6) a statement from the victim's

friend, Michelle Thompson, specifically; (7) a statement from the individual who gave

the victim a ride to the hospital after the attack; and (8) an expert witness to review the

sexual exam report and DNA analysis reports.  (Pet. 11-14.)  Petitioner also claims that

his counsel failed to impeach the *Spreigl* witness's testimony.  (Pet. 13.)

For Petitioner to obtain relief for ineffective assistance of counsel, he must show

that his counsel's conduct fell below an objective standard of reasonableness.  *See*

*Strickland v. Washington,* 466 U.S. 668, 687-88 (1984).  The benchmark for judging a

claim of ineffective assistance of counsel is whether counsel's conduct undermined the

adversarial process.  *Id.*  To prevail on a claim of ineffective assistance of counsel,

Petitioner must show that the attorney made errors so serious that he was not functioning

as the "counsel" guaranteed under the Sixth Amendment.  *Id.*  Further, Petitioner must

demonstrate that the errors prejudiced him and deprived him of a fair trial.  *Id.*

A reviewing habeas court must examine counsel's conduct with a high degree of deference rather than second-guessing counsel's conduct with the benefit of hindsight. *Id.* at 689. The burden is on Petitioner to show a "reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citing *Strickland*, 466 U.S. at 693). One who claims ineffective counsel by his attorney bears a heavy burden in proving unfairness. *Garton v. Swenson*, 497 F.2d 1137, 1139 (8th Cir. 1974). In fact, this Court "need not address the reasonableness of the attorney's behavior if the movant cannot prove prejudice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

In this case, Petitioner has failed to satisfy either of the *Strickland* requirements. Petitioner merely makes conclusory allegations of counsel error. He does not offer contextual facts or arguments as to the effect of the presumed errors on the trial, or any evidence of prejudice that was suffered due to the presumed errors.

To show ineffective assistance of counsel for failure to interview a witness, Petitioner must "make a substantial showing that, but for counsel's failure to interview . . . there is a reasonable probability that the result of his trial would have been different." *United States v. Vazquez–Garcia*, 211 F. App'x 544, 546 (8th Cir. 2007). To show ineffective assistance of counsel for failure to conduct a more extensive investigation or obtain an independent expert witness, Petitioner must show that he suffered prejudice sufficient to undermine the confidence in the outcome of the trial. *See Garrett v. United States*, 78 F.3d 1296, 1302 (8th Cir. 1996).

Petitioner has made no showing of prejudice concerning any absent witness's ultimate effect on the outcome of the trial. He has made no showing of a reasonable probability the result of the trial would have been different if counsel had interviewed the witnesses identified by Petitioner, or had impeached the *Spreigl* witness with the witness's prior conviction. Indeed, Petitioner does not contend that *any* of the potential fact witnesses would have materially affected the outcome of the trial. Nor does he explain how he was prejudiced by the lack of an expert witness. Petitioner merely states that his counsel failed to obtain statements from certain possible witnesses, failed to obtain an expert witness, and failed to impeach the *Spreigl* witness, without identifying a single respect in which he was prejudiced by these failures.

In sum, Petitioner has not shown that his counsel's conduct fell below an objective standard of reasonableness. He has not demonstrated that his attorney made serious errors, failed to properly investigate the case, or that any alleged error prejudiced him or deprived him of a fair trial. Therefore, Petitioner's claim for ineffective counsel fails.

**C.     Sixth Amendment Right to a Speedy Trial**

Petitioner claims he was denied his right to a speedy trial. On July 25, 2012, Petitioner was charged with two counts of first-degree criminal sexual conduct. *Welton*, 2014 WL 621543, at *2. Petitioner demanded a speedy trial on August 17, 2012, but consented to a continuance requested by his attorney at his *Rasmussen* hearing. *Id.* at *8. Because of this consent, the trial was moved from October 8, 2012, to November 5, 2012. *Id.* "On November 2, the district court continued the trial due to a conflict with another trial on the prosecutor's calendar." *Id.* The trial commenced on November 26, 2012.

A court considers four factors in assessing whether a defendant's right to a speedy trial has been violated: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.*

"[T]he Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences." *United States v. Sprouts*, 282 F.3d 1037, 1042 (8th Cir. 2002). The United States Supreme Court has indicated that a delay of a year between accusation and trial is presumptively prejudicial. *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). The term "presumptively prejudicial" in this context "does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Id.*

In this case, the time between when Petitioner was charged and his trial was only 124 days, including the continuances. Since Petitioner was only in custody 124 days before his trial, the delay is not sufficient to trigger a *Barker* inquiry. *See id.* But even if it did, the factors on the whole do not support a finding that Petitioner's speedy trial right was impinged. The delay was caused by two continuances: one requested by Petitioner's attorney, the other by the prosecutor to accommodate a trial conflict. It is not disputed that the first delay was requested by the Petitioner's attorney. Therefore, the first continuance weighs slightly against Petitioner. *Vermont v. Brillon*, 556 U.S. 81, 90-91

(2009) (a delay caused by the defendant or his counsel weighs against the defendant).

As for the continuance requested by the prosecutor, while "[a] deliberate attempt to delay

the trial in order to hamper the defense should be weighted heavily against the

government," *Barker*, 407 U.S. at 531, there is no indication that the continuance

requested by the prosecutor was such an attempt. Nor does Petitioner even contend the

State acted negligently. *See id.* (finding the state's negligence a "more neutral" reason

that should not be weighed heavily). Accordingly, the second continuance weighs only

slightly in Petitioner's favor.

Finally, although Petitioner did assert his right to a speedy trial, he identifies no

prejudice resulting from the delay. Therefore, the Court concludes that Petitioner was not

deprived of his Sixth Amendment right to a speedy trial, and he should not be granted

habeas relief on this claim.

### D.      Certificate of Appealability

Before appealing a final ruling on a federal habeas corpus petition, a state prisoner

must be granted a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); Fed.

R. App. P. 22(b)(1). The Court cannot grant such a certificate unless "the applicant has

made a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2). The applicant must show that the issues to be raised on appeal are

"debatable among reasonable jurists," that different courts "could resolve the issues

differently," or that the issues otherwise "deserve further proceedings." *Flieger v. Delo*,

16 F.3d 878, 882-83 (8th Cir. 1994).

The Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Petitioner's claims any differently than recommended here. Petitioner has not identified, and the Court cannot independently discern, anything novel, noteworthy, or worrisome about this case that warrants appellate review.  The Court therefore recommends that Petitioner not be granted a COA in this matter.

## III.    Recommendation

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Albert J. Welton, III's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. No. 1] be **DENIED**;

2.    This action be **DISMISSED WITH PREJUDICE**;

3.    A certificate of appealability **NOT BE GRANTED**; and

4.    **JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: October 8, 2015                    s/ *Hildy Bowbeer*
                                          HILDY BOWBEER
                                          United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those

objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.