UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Albert J. Welton, III,

        Petitioner,

    v.

Warden Michelle Smith,

        Respondent.

**MEMORANDUM OPINION AND ORDER**
Civil No. 14-3044 ADM/HB

___

Albert J. Welton, III, *pro se*.

Lee W. Barry, III, Esq., Assistant County Attorney, Hennepin County Attorney's Office, Minneapolis, MN, on behalf of Respondent.

___

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Albert J. Welton, III's ("Welton") Objections [Docket No. 30] to Magistrate Judge Hildy Bowbeer's Report and Recommendation ("R&R") [Docket No. 24] and Motion to Appoint Counsel [Docket No. 27]. In the R&R, Judge Bowbeer recommends denying Welton's Petition for a writ of habeas corpus filed under 28 U.S.C. § 2254 ("Petition") [Docket No. 1]. For the reasons set forth below, Welton's Objections are overruled and Judge Bowbeer's R&R is adopted. Welton's Motion to Appoint Counsel is denied.

## II. BACKGROUND

### A. Factual History of Underlying Offense

On February 5, 2012, victim D.I. left the house she was socializing at and began walking to a nearby convenience store to purchase cigarettes. State v. Welton, No. A13-0575, 2014 WL 621543, at *1 (Minn. Ct. App. Feb. 18, 2014), review denied (Apr. 29, 2014). While D.I. was en

route to the store, Welton approached in a black Pontiac Grand Am and offered her a ride. Id. D.I. voluntarily accepted. Id. D.I. later testified that she accepted the ride because she thought she recognized the driver from the gathering she just left. Id. Once D.I. was in the car, Welton explained that he needed to stop at his home to retrieve some money and that he intended to drive to a different convenience store. Id. Welton next drove into a South Minneapolis alley near 33rd Street and Stevens Avenue and asked D.I. if she wanted to smoke marijuana. Id. D.I. accepted. Id. After smoking, Welton asked D.I. if she wanted to have sex. Id.

After Welton questioned her about sex, D.I. looked out of the car's window and noticed that the adjacent house was boarded up. Id. She asked Welton, "[T]his ain't your house, where are we at?" Id. Welton then repeatedly struck D.I. in the face with a closed fist. Id. D.I. unsuccessfully attempted to escape the car from her passenger door. Id. D.I. was later in the car's back seat, either as a result of her continued struggle to leave the car or through force. Id. Once in the rear of the car, D.I. was able to open a door and almost escaped when Welton pulled her back inside. Id. Welton next retrieved something from the front, which D.I. thought to be a hammer or other weapon. Id. D.I. both feared for her life and understood that Welton intended to rape her. Id. D.I. requested Welton wear a condom to protect her from disease. Id. "Holding D.I. down, and holding a condom in his teeth, [Welton] made growling sounds, flung the condom aside, pulled off D.I.'s jeans and underwear, and raped her." Id.

After the rape, Welton demanded money. Id. at *2. D.I. retrieved her purse from the front of the car and requested to be driven to a nearby intersection. Id. Welton, however, started to drive in the opposite direction. Id. D.I. was able to eventually escape from the car at a stop sign and yell to people nearby that she had been raped. Id. When Welton drove off, D.I.

memorized the car's license plate number.  Id.

D.I. later underwent a sexual-assault examination at Abbott Northwestern Hospital.  Id. The examiner testified at trial that D.I. had bruising on her face and head, sensitivity near her jaw and around her eye, and an injury to her wrist.  Id.  Photographs of D.I.'s injuries and a recovered semen sample that matched Welton's DNA profile were collected.  Id.  D.I. was also able to later identify Welton in a photo lineup as her attacker and the license plate number that D.I. memorized matched a black Pontiac Grand Am registered to Welton.  Id.

At trial, the district court conducted a Spreigl[1] hearing regarding evidence from an alleged sexual assault by Welton against another woman, J.K.  Id.  At the hearing, J.K. testified that, while she was working as a prostitute, a man in a black Pontiac Grand Am solicited her services.  Id.  After getting in his car, J.K. testified that the driver attacked her with a wooden object and threatened to kill her.  Id.  The driver then raped her.  Id.  After the rape, the driver demanded money.  Id.  The trial court admitted the Spreigl evidence, and J.K. was permitted to testify to the jury at Welton's trial on the underlying offense of criminal sexual conduct with D.I. as the victim.  Id.

On November 20, 2012, a Hennepin County jury found Welton guilty of two counts of first-degree criminal sexual conduct.  Id. at *3; Pet. 2–3.  Welton was later sentenced to 360 months imprisonment.  Welton, 2014 WL 621543, at *3.

**B. Procedural History**

Welton appealed his conviction to the Minnesota Court of Appeals, arguing that the

---

[1] Under Minnesota law, Spreigl evidence is evidence of other crimes admitted to show a defendant's motive, intent, identity, absence of mistake, or a common plan or scheme.  State v. Spreigl, 139 N.W.2d 167, 173 (Minn. 1965).

district court erred in improperly admitting the Spreigl evidence and entering judgments of conviction on both counts even through they arose from a single behavioral incident.  See generally id.  Welton also argued ineffective assistance of counsel and constitutional claims, which included an alleged speedy trial violation.  Id.  The Court of Appeals rejected Welton's arguments concerning the Spreigl evidence, ineffective assistance of counsel, and speedy trial, but agreed that the district court improperly adjudicated Welton guilty of two crimes for a single act of criminal sexual conduct.  Id. at *6–7.  Welton appealed to the Minnesota Supreme Court, which denied further review.

      Welton filed this habeas petition on July 30, 2014, raising three grounds for relief.  Welton first argues that the Spreigl evidence did not establish a common scheme or plan and thus should not have been admitted.  Next, Welton argues that he was denied effective assistance of counsel.  Finally, Welton argues that he did not waive his right to a speedy trial.

      Judge Bowbeer considered Welton's arguments and recommended dismissal of the writ.  Judge Bowbeer concluded that Welton failed to demonstrate that admitting the Spreigl evidence clearly violated established Supreme Court precedent.  Welton's ineffective of assistance of counsel argument was denied because Welton was unable to show that his counsel's conduct fell below an objective standard of reasonableness, and that any missteps were minor and did not deprive Welton of his right to a fair trial.  Finally, Judge Bowbeer reasoned that the time between Welton being charged and his first day of trial was insufficient to afford Welton any relief, concluding that any delay did not deprive Welton of his Sixth Amendment right to a speedy trial.  Judge Bowbeer additionally recommended that Welton be denied a certificate of appealability.

Welton timely requested an extension of time [Docket No. 26] to file his Objections, which were then docketed on December 10, 2015.  In the Objections, Welton continues to assert that the <u>Spreigl</u> evidence should not have been admitted, his trial counsel was ineffective, and his speedy trial rights were violated.  Welton additionally contests the recommendation to deny him a certificate of appealability.

### III.  DISCUSSION

The district court must undertake an independent, *de novo*, review of those portions of a R&R to which objection is made and "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C); see also D. Minn. LR 72.2(b).

**A.  Habeas Petition**

 **1.  <u>Spreigl</u> Evidence**

Welton again argues that the state's introduction of <u>Spreigl</u> evidence was improper and should have been barred by the trial court.  Welton continues to challenge the judgment of the trial court in permitting the introduction of such evidence.  This line of argument was rejected on direct appeal and, as Judge Bowbeer correctly noted, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67–68 (1991).  To be successful here, Welton must show a violation of a clearly established Supreme Court precedent.  <u>See</u> <u>Evenstad v. Carlson</u>, 470 F.3d 777, 783 (8th Cir. 2006).

The arguments raised in Welton's objections do not identify a clearly established Supreme Court precedent the trial court violated.  The arguments raised here continue to

challenge the trial court's decision to admit the evidence. Such a decision does not demonstrate a violation of Supreme Court precedent because it is well-established that admissibility of such evidence is within the discretion of a trial judge. See Lego v. Twomey, 404 U.S. 477, 490 (1972). Welton's argument on this issue fails.

### 2. Ineffective Assistance of Counsel

Welton again argues that he was tried without the effective representation by counsel. Welton contends that neither the Minnesota Court of Appeals, nor Judge Bowbeer effectively reviewed his claims. Welton maintains that an evidentiary hearing is required before his arguments can be properly adjudicated.

With respect to Welton's claim that an evidentiary hearing must be held, Welton has failed to allege sufficient facts to mandate a hearing.[2] "Under 28 U.S.C. § 2254, a federal district court must hold an evidentiary hearing when a [habeas] petition alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." Spillers v. Lockhart, 802 F.2d 1007, 1009 (8th Cir. 1986). The specific investigatory and cross-examination shortcomings Welton asserts against his trial attorney do not warrant an evidentiary hearing. Welton simply raises areas of investigation or lines of questioning he believes his trial attorney should have explored. These conclusory arguments do not present any specific reason why, but for counsel's ineffectiveness, the outcome of the trial would have been different. See Ruiz v. Norris, 71 F.3d 1404, 1407 (8th Cir. 1995) (affirming district court's

---

[2] On September 18, 2014, Welton filed a Motion to Compel Discovery [Docket No. 16]. On September 23, 2014, Judge Bowbeer denied Welton's request, concluding that since Welton had not demonstrated that his requested discovery would entitle him to relief, his request failed to show the requisite good cause. See Order [Docket No. 21]. Judge Bowbeer noted that the state had already produced the requested evidence in earlier proceedings. See id. at 2–3.

decision that petitioners unspecific ineffective assistance of counsel arguments failed to provide suitable justification to warrant an evidentiary hearing).

Although not formally raised in his objections, Judge Bowbeer did not err in concluding that Welton's ineffective assistance of counsel arguments failed the reasonableness standard of Strickland v. Washington, 466 U.S. 668, 687–88 (1984).  As Judge Bowbeer correctly determined, Welton's complaints regarding his attorney's failures to interview or procure witnesses do not entitle him to relief because Welton is unable to demonstrate that but for his attorney's failures, "there is a reasonable probability that the result of his trial would have been different."  United States v. Vazquez-Garcia, 211 F. App'x 544, 546 (8th Cir. 2007).  Judge Bowbeer was also correct in concluding that Welton's arguments regarding his attorney's failure to conduct a more extensive investigation or obtain an independent expert witness failed because they do not demonstrate sufficient prejudice that undermines the confidence in the outcome of the trial.  See Garrett v. United States, 78 F.3d 1296, 1302 (8th Cir. 1996).[3]

**3.  Speedy Trial**

Welton also argues that his speedy trial rights were violated.  Welton objects to Judge Bowbeer's conclusion that the delay between his arrest and commencement of trial was not presumptively prejudicial.  Welton additionally argues that his speedy trial demands were impermissibly trumped by the trial court and the government.

In considering whether a defendant's right to a speedy trial has been violated, a court is to consider the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right,

---

[3] Notably, when addressing Welton's ineffective assistance of counsel arguments on direct appeal, the Minnesota Court of Appeals noted that "[s]everal of [Welton's] claims are plainly contradicted by the record."  Welton, 2014 WL 621543, at *7.

and prejudice to the defendant." Barker v. Wingo, 407 U.S. 514, 530 (1972). The length of delay is a precursor to considering the remaining three factors; without a delay that is presumptively prejudicial, there is no need to assess the other considerations. Id. "[B]ecause of the imprecision of the right to speedy trial, the length of delay that will provoke [further] inquiry is necessarily dependent upon the particular circumstances of the case." Id.

Judge Bowbeer correctly concluded that Welton's speedy trial rights had not been violated. The time between Welton being charged and the first day of his trial was 124 days. While there is no bright line establishing when a delay becomes presumptively prejudicial, the Supreme Court has indicated that a delay of one year will necessitate further inquiry. Doggett v. United States, 505 U.S. 647, 652 n.1 (1992).[4] Judge Bowbeer was correct to conclude that Welton's claim did not require further analysis.

While Welton does not explicitly object to this conclusion, Welton does take issue with Judge Bowbeer's observation that "[Welton] identifies no prejudice resulting from the delay." Objection 10. Welton then cites Doggett for the proposition that a defendant making a speedy trial challenge is not burdened with proffering affirmative proof of particularized prejudice. However, in Doggett, the defendant's delay between indictment and arrest was over eight years. Id. at 650. Recognizing that the defendant's "extraordinary" delay was presumptively

---

[4] Welton notes in his objection that "[t]he trial court and the states [sic] understanding of the rule requires that petitioner's trial begins 60–90 days from the date of arrest." Objections at 7. The rule in Minnesota is that a defendant's trial must begin with 60 days of making a speedy trial demand. State v. DeRosier, 695 N.W.2d 97, 108–09 (Minn. 2005). However, "[i]t is not the province of a federal habeas court to reexamine state court determination on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States." Estelle, 502 U.S. at 67–8.

prejudicial, the Supreme Court noted that it was of no concern that the defendant failed to cite any specifically demonstrable prejudice about his claim because the "excessive delay presumptively compromises the reliability of a trial." Id. at 652, 654. Since Welton's limited delay of just over four months is neither extraordinary nor excessive, there is no presumed prejudice or fear of a compromised trial similar to that in Doggett.

### 4. Certificate of Appealability

Welton's final objection is with Judge Bowbeer's recommendation that he not be granted a certificate of appealability. Nothing in Welton's objection finds fault in Judge Bowbeer's conclusion and this Court agrees that it is unlikely that the Eighth Circuit Court of Appeals would reach a different conclusion. A certificate of appealability will not be issued.

## B. Appointment of Counsel

On October 26, 2015, after the R&R was issued but before his objections were filed, Welton moved for appointment of counsel. This is the second time Welton has requested counsel, with his first request [Docket No. 2] filed contemporaneous with the petition. On August 6, 2014, former Magistrate Judge Jeanne J. Graham[5] denied [Docket No. 5] Welton's request. On September 2, 2014, Welton moved for reconsideration [Docket No. 14], which was denied by this Court on September 22, 2014 [Docket No. 18].

As noted in the September 22, 2014 Order, a petitioner does not have a right to counsel in a habeas corpus proceeding. Pennsylvania v. Finley, 481 U.S. 551, 556 (1987); McCall v. Benson, 114 F.3d 754, 756 (8th Cir. 1997). However, appointment of counsel may be necessary when "the interests of justice so require." Abdullah v. Norris, 18 F.3d 571, 573 (8th Cir. 1994).

---

[5] On August 7, 2014, this case was reassigned to Judge Bowbeer.

When deciding whether it is suitable to appoint counsel, a court considers the legal and factual complexity of the petition and the petitioner's ability to present the claims, among other factors. Hoggard v. Purkett, 29 F.3d 469, 471 (8th Cir.1994).

The interests of justice here do not require appointment of counsel.  The claims Welton raises do not involve complex factual issues.  Furthermore, while ultimately unsuccessful, Welton was able to clearly articulate his position and provide legal support and reasoning for his arguments.  For these reasons, appointment of counsel is properly denied.

### IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Albert J. Welton, III's Objections [Docket No. 30] to Magistrate Judge Hildy Bowbeer's October 8, 2015 Report and Recommendation [Docket No. 24] is **OVERRULED**;

2. The Report and Recommendation is **ADOPTED**;

3. Albert J. Welton's Petition for a writ of habeas corpus filed under 28 U.S.C. § 2254 [Docket No. 1] is **DISMISSED**; and

4. Albert J. Welton's Motion to Appoint Counsel [Docket No. 27] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

　　　s/Ann D. Montgomery　　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  February 1, 2016.